Eastern District of Kentucky
FILED

MAY 27 2005

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 04-20-JBT

UNITED STATES OF AMERICA,     PLAINTIFF

V.     **MEMORANDUM OPINION**

MPM FINANCIAL GROUP, INC., and
MICHAEL P. MORTON, President, MPM
Financial Group, Inc.,     DEFENDANTS

\* \* \* \* \*

## I. INTRODUCTION

Plaintiff United States of America, by counsel, brings this action against defendants, MPM Financial Group, Inc., (hereafter "MPM") and Michael P. Morton (hereafter "Morton"), pursuant to 26 U.S.C. § 6332(d), to enforce an Internal Revenue Service levy served on defendant MPM on or about August 23, 2000, concerning Morton's wages and salary Morton earned during the period of time from August 23, 2000, to June 21, 2001, the date the levy was released. Plaintiff also seeks the imposition of a statutory 50% penalty against the defendants, pursuant to 26 U.S.C. § 6332(d)(2), for their failure, without reasonable cause, to honor the levy in question, plus applicable interest, and its costs of this action.[1]

This matter is before the court on cross-motions for summary judgment filed by plaintiff and by defendant MPM. These motions have been fully briefed and are ripe for review.

## II. FACTUAL BACKGROUND

During the relevant period of time in question, defendant Morton was president of defendant MPM, an insurance agency and a subchapter S-corporation comprised of three owners, each of whom had a 1/3 interest in the corporation. The three owners of MPM are Dale Baldwin, Al Prewitt,

---

[1] On April 25, 2005, the court granted plaintiff's motion for default judgment against defendant Morton and awarded plaintiff default judgment against Morton in the amount of $77,058.78, plus statutory additions accruing after March 31, 2005. See DE #43.

and Morton. MPM was formed in 1995 or 1996. Until February 14, 2002, Morton was MPM's president, Dale Baldwin was MPM's secretary/treasurer, and Al Prewitt was MPM's CEO. Dale Baldwin was also designated as MPM's registered agent for service of process. During the period of time from its formation until February 14, 2002, MPM also employed an administrative assistant, Nicole Jordan, whose duties primarily concerned customer service.[2]

Thus, only these four individuals were involved in MPM's management and administration: Morton, Dale Baldwin, Al Prewitt, and Nicole Jordan. By mutual agreement among MPM's three owners, it was agreed that Morton would manage the office (open the mail, make bank deposits, authorize the cutting of payroll checks) and Baldwin and Prewitt would operate outside of the office looking for new business and making sales calls.

On or about August 23, 2000, the Internal Revenue Service ("IRS") sent a levy to MPM by regular mail, not certified or registered mail, at its business address, 3080 Harrodsburg Road, Suite 101, Lexington, KY 40513, that concerned wages, salary, or other income that would subsequently be paid to Morton. This levy advised MPM that Morton owed the IRS $104,009.54, including interest and late payment penalties, for unpaid federal income taxes for the years 1989-1995, inclusive.[3] The first page of the levy stated in all capital letters and in bold print: **"THIS ISN'T A BILL FOR TAXES YOU OWE. THIS IS A NOTICE OF LEVY WE ARE USING TO COLLECT MONEY OWED BY THE TAXPAYER NAMED ABOVE."** Dale Baldwin Deposition, Exhibit 2. This levy also contained instructions as to how to comply therewith.

Morton, being the principal at MPM who opened the office mail, received the foregoing levy; however, Morton did not disclose receipt of this levy to MPM's co-owners, Baldwin and

---

[2] On February 14, 2002, Morton was removed from his position as MPM's president and is no longer actively involved with MPM. Following his termination, Dale Baldwin became MPM's president, and Nicole Jordan became MPM's secretary/treasurer.

[3] For quite some time prior to the levy being sent to MPM, the IRS had dealt with Morton, individually, in an unsuccessful attempt to collect the foregoing unpaid federal taxes from him and his wife, Pamela B. Morton.

2

Prewitt, and did not comply with the levy's instructions on withholding a portion of Morton's income and remitting same to the IRS. In short, no one at MPM knew about this levy except Morton, who elected to ignore the levy, and no amounts of Morton's income he received from MPM subsequent to receipt of this levy were withheld and paid to the IRS.

In the interim, the IRS continued to deal with Morton and his wife, individually, concerning this outstanding, unpaid tax liability, separate and apart from the levy the IRS had mailed to MPM. On or about June 21, 2001, Morton made an offer in compromise ("OIC") to the IRS concerning the tax liability in question. Upon receipt of Morton's OIC, the IRS, pursuant to its own regulations, released the levy that had been sent to MPM concerning the withholding of a portion of Morton's income to be paid to the IRS and applied to his outstanding federal tax liability. Subsequent to the receipt of Morton's OIC and the release of the levy sent to MPM, the IRS has been unable to collect the unpaid federal taxes owed by Morton for the years 1989-1995, inclusive, exclusive of statutory penalties and interest.

### III. THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

#### A. Standard for Summary Judgment

In *Menuskin v. Williams*, 145 F.3d 755 (6th Cir. 1998), the Sixth Circuit reiterated the standard to be employed when considering a motion for summary judgment, as follows:

> . . . Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, we view the evidence so that all justifiable inferences are drawn in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*Menuskin*, 145 F.3d at 761. *See also Street v. J. C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989).

With this standard in mind, the court will proceed to the cross-motions for summary judgment.

B.  **Plaintiff's motion for summary judgment**

In support of its motion for summary judgment, the United States points out that a third party in possession of a taxpayer's property or rights to property subject to a levy is required to surrender such property or rights to property upon demand. 26 U.S.C. § 6332(a). Plaintiff submits that the IRS properly served the notice of levy in question to MPM, that it is undisputed that MPM failed to honor this levy, and that there are only two defenses for the failure to honor a levy, *viz.*, (1) the third party is not in possession of the taxpayer's property or rights to property, or (2) the property is subject to a prior judicial attachment or execution. 26 U.S.C. § 6332(a). Plaintiff contends that MPM cannot avail itself of either of these two defenses for failing to honor the levy and that the defenses raised by MPM are irrelevant; therefore, plaintiff argues that it is entitled to summary judgment on its complaint for MPM's failure to honor the levy and that MPM is obligated to pay to the Internal Revenue Service the amounts that should have been withheld from the income paid to Morton during the period of time the levy was in effect, August 23, 2000 to June 21, 2001, plus the statutory 50% penalty and applicable interest.

C.  **MPM's motion for summary judgment**

In support of its motion for summary judgment, MPM argues that the act of the IRS in sending it the levy in question by regular mail was insufficient and that the IRS should have served the notice of levy on it by sending it by certified or registered mail, as required by 26 U.S.C. § 6331(d)(2), to its registered agent for service of process, Dale E. Baldwin. Additionally, MPM argues that it has been deprived of due process in that the IRS did not contact it prior to issuance of the levy to investigate the subject property, as required by 26 U.S.C. § 6331, and that the IRS violated its own internal procedures in serving this levy on MPM.

### Applicable Law

A levy upon property is effected "by the sole act of serving notice of levy upon the third party holding the property." *Kane v. Capital Guardian Trust Co.*, 145 F.3d 1218 (10th Cir. 1998) (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350 (1977). *See also, Resolution Trust Corp.*

4

*v. Gill*, 960 F.2d 336, 340 (9th Cir. 1992) ("[A] levy is effective upon the IRS's service of the notice of levy."); 26 C.F.R. § 301.6331-1(c).

The Internal Revenue Code provides only the following two defenses for a third party's failure to honor a levy: (1) the third party is not in possession of the taxpayer's property or rights to property; or (2) the property is subject to a prior judicial attachment or execution. 26 U.S.C. § 6332(a). Well-settled precedent has established that the foregoing defenses are the only two defenses available for failing to honor a levy. *See United States v. National Bank of Commerce*, 472 U.S. 713, 721-22 (1985); *United States v. Weintraub*, 613 F.2d 612, 620 (6th Cir. 1979); *United States v Sterling National Bank & Trust*, 494 F.2d 919, 921 (2nd Cir. 1974); *Farr v. United States*, 990 F.2d 451, 456 (9th Cir. 1993). "Where these defenses do not apply, the Government's interest in the speedy collection of taxes trumps other claimants' interests in the property[.]" *Texas Commerce Bank-Fort Worth v. United States*, 896 F.2d 152, 157 (5th Cir. 1990) (citing *National Bank of Commerce*, 472 U.S. at 729).

## Analysis

The court notes that MPM, in defending itself herein, has not raised either of the only two available defenses for a third party's failure to honor a levy, *viz.*, (1) that it was not in possession of Morton's property or rights to property during the period of time the levy in question was in effect, from August 23, 2000, to June 21, 2000, or (2) Morton's property that was sought by the levy in question was subject to a prior judicial attachment or execution. Furthermore, neither of these defenses is available to MPM for the following reasons: (1) during the period of time this levy was in effect, MPM possessed property or rights to property belonging to Morton; however, during this same period of time, MPM continued to pay Morton his regular salary or wages (his proportionate share of income earned from commissions), with no withholding therefrom as requested by the levy, and (2) there is no evidence to suggest that Morton's property which MPM possessed during the period of time the levy was in effect was subject to prior judicial attachment or execution.

5

Nevertheless, in countering plaintiff's motion for summary judgment, MPM asserts a due process violation, arguing that the act of the IRS in sending it the levy in question by regular mail was insufficient and that the IRS should have served the notice of levy on it by sending it by certified or registered mail, as required by 26 U.S.C. § 6331(d)(2), to its registered agent for service of process, Dale E. Baldwin. Additionally, MPM argues that it has been deprived of due process in that the IRS did not contact it prior to issuance of the levy to investigate the subject property, as required by 26 U.S.C. § 6331, and that the IRS failed to comply with its own internal procedures in the way it processed this levy.

### A.     Service of the levy by regular mail

26 U.S.C. § 6331(d)(2) provides, as follows:

> **(2) 30-day requirement.** – The notice required under paragraph (1) shall be –
>     **(A)** given in person,
>     **(B)** left at the dwelling or usual place of business of such person, or
>     **(C)** sent by certified or registered mail to such person's last known address,
> no less than 30 days before the day of the levy.

26 U.S.C. § 6331(d)(2).

Paul Hert, the IRS agent who requested that this levy be generated and mailed to MPM, testified that it was sent to MPM by regular U.S. mail, not certified or registered mail, and that it was not addressed to anyone in particular at MPM. (Hert Deposition, p. 45). Hert also testified that it was his normal procedure to mail a levy by regular U.S. mail to a company address, not to anyone in particular at the company. Id. Hert further testified that subsequent to the mailing of the levy to MPM, Morton acknowledged to Hert that he had received the levy (Hert Deposition, p. 50), and there is no testimony of record from Morton denying that he in fact received the levy in question. Thus, it is undisputed that Morton, the person in MPM's office who opened MPM's mail, received the levy and elected not to respond to it.

In this case, the IRS simply addressed the levy to MPM and mailed the levy by regular mail to MPM at its usual place of business. Although mailing the levy by certified or registered mail might have been preferable and would have provided more definitive proof that MPM received the

levy, the court concludes that the act of mailing the levy to MPM by regular mail at its usual place of business complies with 26 U.S.C. § 6331(d)(2)(B).[4]

Given the 30-day advance notice requirement set out in 26 U.S.C. § 6331(d)(2)(B), since the levy is dated August 23, 2000, and was mailed to MPM on August 23, 2000, the court concludes that MPM would not have been obligated to begin compliance with the levy until September 22, 2000.

## B.   Failure to investigate the subject property

MPM argues that the IRS was required to contact it prior to issuance of the levy to investigate the subject property, as required by 26 U.S.C. § 6331.

The authority for this argument appears to be 26 U.S.C. § 6331(j), which provides that:

> **(j) No levy before investigation of status of property –**
>
> **(1) In general.** – For purposes of applying the provisions of this subchapter, no levy may be made on any property or right to property which is to be sold under section 6335 until a thorough investigation of the status of such property has been completed.

26 U.S.C. § 6331(j).

In this case, the levy did not concern property that was to be sold. The levy concerned Morton's proportionate share of income derived from commissions received by MPM to which he was entitled as a principal and owner of MPM. Consequently, MPM's failure to investigate argument is without merit.

## C.   Failure to comply with its own internal procedures

MPM also argues that prior to serving the levy in question to it, the IRS violated its own internal procedures. Specifically, MPM argues, as follows:

> In fact, the IRS violated its own internal policy. The IRS failed to consider the effect the Levy had on the innocent third-party, MPM. As required by its own procedural manual, Hert had the duty to "consider the effect that the notice of levy may have on innocent third parties." Internal Revenue Manual, Part 5, Chapter 11,

---

[4] MPM also argues that the IRS should have served the levy on its registered agent for service of process, Dale E. Baldwin; however, 26 U.S.C. § 6331(d)(2) does not specify that service of a levy must be made on an agent for service of process. Thus, this argument is also without merit.

7

> Section 2.1.1. Yet, despite this duty, the IRS persisted in dealing with an individual with whom it had seen little or no cooperation for years. Although Morton had been stringing Hert along for some time, and was clearly acting in bad faith, Hert made no effort *before* serving the Levy to determine the identity of the process agent for MPM, nor inquire during his many calls to MPM *after* serving the Levy as to who was the proper corporate representative and/or registered agent for the company. (Exhibit 1 to Hert depo. p. 16).

MPM's Memorandum in Support of Motion for Summary Judgment, p. 9 - DE #31.

The court is unpersuaded by this argument. In this particular case, whether the IRS complied with its own internal policy concerning the issuance of levies or failed to comply therewith is irrelevant to the only two defenses available to MPM for its failure to honor the levy in question. As previously pointed out, MPM is entitled to neither defense. Thus, the failure, if any, of the IRS to comply with its internal procedures has no bearing on the fact that the levy in question was mailed to and received by Morton at MPM's usual business address and, as the result of Morton's failure to disclose this levy to the other two principals of MPM, MPM failed to honor this levy. Additionally, as previously pointed out, contrary to MPM's argument, the IRS had no obligation to serve this levy on MPM's registered agent for service of process in order to legitimize this levy.

## IV. CONCLUSION

For all of the reasons stated above, based on the factual background of this case and the applicable statutes and case law, the court concludes that since there are no genuine issues of material fact, the plaintiff is entitled to summary judgment against defendant MPM on its complaint for the enforcement of the levy in question. In reaching this conclusion, the court is not unmindful of or unsympathetic to MPM's argument that equitably, it is unfair to MPM at this juncture, when it is no longer in possession of any of Morton's property that could be used to satisfy the levy, to require it to now pay to the IRS the proceeds which should have been paid to the IRS while the levy was in effect in 2000 and 2001, plus penalties and interest. However, MPM's equitable argument, while appealing, cannot save the day and is an argument that may be better addressed to Congress. As a matter of law, there are only two defenses available to MPM in this case for its failure to honor the levy in question, and MPM does not qualify for either defense.

### Penalty for violation

Plaintiff also seeks to impose the statutory penalty authorized by 26 U.S.C. § 6332(d)(2) against MPM for its failure to honor the levy in question by surrendering the property subject to the levy. 26 U.S.C. § 6332(d)(2) provides, as follows:

> **(2) Penalty for violation.–** In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

The regulations provide that this penalty is inapplicable where a "bona fide dispute" exists concerning the amount to be surrendered or the legal effectiveness of the levy. 26 C.F.R. § 301.6332-1(b)(2); *United States v. Kamin*, 1995 WL 841994, at *2 (E.D. Mich. Dec. 27, 1995).

In this case, there is no dispute as to the amount that should have been surrendered to the United States at the time the levy was served on MPM, and there was never a dispute as to the legal effectiveness of this levy. (Dale Baldwin Deposition, p. 48). Therefore, neither of the exceptions to the imposition of the 50% penalty is applicable to MPM. While this penalty may appear to MPM to add insult to injury in this particular case, MPM must keep in mind that if there had been a system of checks and balances in place at its office at the time this levy was served to MPM, it is unlikely that Morton, the truly culpable party in this situation, would have been able to keep this notice of levy from coming to the attention of either Al Prewitt or Dale Baldwin, MPM's two other principals and owners. It is not the fault of the government that the organizational structure at MPM and/or a lack of a system of checks and balances at MPM created the environment at MPM where the conduct of Morton could occur unbeknownst to MPM's two other owners.

### Calculation of damages

In determining the amount of plaintiff's damages, *i.e.*, the amounts that MPM should have withheld from Morton's income during the time this levy was in effect, the court is guided by the Paystub Summary for Michael Morton (Exhibit 4 to Dale Baldwin's deposition), which sets out

9

Morton's gross earnings, the taxes withheld therefrom, the net amount payable to Morton, the exemption amount of $1,050 per pay check, and arrives at the amount that should have been withheld from Morton's earnings and remitted to the United States in compliance with the levy. This Paystub Summary covers the period of time for checks dated August 30, 2000 to January 11, 2002.

As previously stated herein, with the 30-day advance notice requirement set out in 26 U.S.C. § 6331(d)(2)(B), since the levy is dated August 23, 2000, and was mailed to MPM on August 23, 2000, MPM would not have been obligated to begin compliance with the levy until September 22, 2000. Additionally, since the levy was released with an effective release date of June 21, 2001, MPM would not have been obligated to comply with the levy after it had been released. Therefore, with a starting date for compliance of September 22, 2000, and an ending date of June 21, 2001, MPM would only have been obligated to withhold any amounts due under the levy from Morton's income beginning with his paystub dated September 29, 2000, and ending with his paystub dated June 15, 2001.

Assuming the correctness of the calculations in Morton's Paystub Summary, the amounts that should have been withheld from Morton's income and remitted to the United States during the relevant period of time total $29,233.25.

Pursuant to 26 U.S.C. § 6332(d)(2), plaintiff is also entitled to a 50% penalty based on the total amount due under the levy. In this case, the statutory penalty is $14,616.62 (50% of $29,233.25).

An Order and Judgment in conformity with this Memorandum Opinion will be entered on the same date herewith.

This 27th day of May, 2005.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE

10